UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

United States of America   )
                           )        11cr30019-MGM
vs                         )
                           )
James Waddell              )
_____)

**Transcript of Sentencing** Held Before
The Honorable Michael A. Ponsor,
United States District Court Judge,
on **February 28, 2013.**

<u>APPEARANCES</u>:

For the government: Alex Grant, 300 State Street,
Springfield, MA 01105.

For the defendant: Bernard T. O'Connor, Jr., 1391 Main
Street, Harrison Place, Suite 1022, Springfield, MA 01103.

Alice Moran, CSR, RPR, RMR
Official Federal Court Reporter
300 State Street, Room 303D
Springfield, MA 01105
Tel: (413)731-0086  Fax: (413)737-7333
alice.moran@verizon.net

1    **(Court commenced at 2:10.)**

2              THE CLERK:  The matter before the court is

3    United States versus James Waddell, Criminal Matter

4    11-30019.

5              THE COURT:  We are here this afternoon for the

6    sentencing of defendant, James Waddell, after his plea of

7    guilty to one count of inducing travel to engage in

8    illegal sexual activity.

9         I understand that after today once the sentencing is

10   completed the government will be moving to dismiss Counts

11   1 through 16 and 18, is that right?

12             MR. GRANT:  Yes, Your Honor, as part of the plea

13   agreement.

14             THE COURT:  Right.  So I just want to review

15   what I have read in preparation for today's sentencing

16   proceeding.

17        I have read, of course, carefully read the

18   presentence report.  I have read the defendant's

19   sentencing memorandum.  I have read the victim-impact

20   statement, and I've read the exhibits appended to the

21   defendant's sentencing memorandum.

22        The plea agreement in this case contemplates a term

23   of 60 months and I have given a great deal of thought to

24   that sentence, and I can tell counsel for both sides that

25   I'm inclined to accept the recommendation that is being

1    made jointly by the government and by the defense.

2         I suppose it's conceivable I could hear something in

3    the next few minutes that would change my mind but it

4    seems to me, for reasons that I think are pretty clear on

5    the record, that this is an appropriate resolution to an

6    unusual case.

7         Before I get into the discussion of the

8    appropriateness of the sentence, however, I do want to

9    address the objections to the presentence report that have

10   been submitted by counsel for the defendant.

11        Mr. Grant, you have no objection to the presentence

12   report?

13             MR. GRANT:  Correct, Your Honor.

14             THE COURT:  All right.

15        The first five objections -- actually I think it's

16   six objections that have been submitted by the defendant

17   had to do with facts related to the case that the

18   defendant disagrees with and that are summarized in the

19   presentence report.

20        I have looked over the presentence report and noted

21   the disagreements that are set forth in Objections 1

22   through 6.  None of those points of dispute, whether

23   they're resolved for the government or resolved for the

24   defendant, is going to affect my sentence in any way.

25        I know that Mr. Waddell takes a certain position with

1   regard to some of the significant alleged facts contained
2   in the presentence report.  The government may take a
3   slightly different position.  These disputes, although I
4   think the defendant feels strongly about them and I
5   understand that, are not going to enter my mind as I weigh
6   what the appropriate sentence is here so I don't feel any
7   need to get into a long discussion about the points of
8   disagreement that the government and the defense have.

9       The fact is that Mr. Waddell has pled guilty to the
10  charge that he stands here to be sentenced for and none of
11  the disputes that are raised by these objections, even if
12  I were to agree with all of them and sustain all of the
13  objections, undercuts or undermines or renders ineffective
14  the plea that he made to the inducement charge.

15      So I'm not inclined, Mr. O'Connor, to get into long
16  argument with regard to them.  I'm simply proposing that
17  it's not necessary for me to make a ruling one way or
18  another, either to sustain your objections or to overrule
19  your objections.

20      I'm repeating myself now, the reason that I'm taking
21  that position is that whether I sustain the objection or
22  overrule the objection it's not going to affect my
23  sentence.

24          MR. O'CONNOR:  That's fine, Your Honor.
25          THE COURT:  All right.  Very good.

1          Mr. O'CONNOR:   Thank you.

2          THE COURT:   Mr. Grant, any comment from you?

3          MR. GRANT:   No.

4          THE COURT:   Okay.   So we will pass over

5    Objections 1 through 6 without any ruling one way or

6    another.   I think I'm repeating myself now for at least

7    the third time, the reason is that I would not be affected

8    in my calculation of the sentence whatever my rulings

9    might be on those objections.

10         I am quite convinced based on the plea colloquy and

11   on the other undisputed facts contained in the presentence

12   report that the plea of guilty to this one count was valid

13   and was substantially supported by the record.

14         Objection No. 7 has already resulted in a correction

15   of the presentence report so I don't feel it's necessary

16   to have any further discussion on that objection.

17         Are you satisfied with that, Mr. O'Connor?

18         MR. O'CONNOR:   Yes, Your Honor.   Thank you.

19         THE COURT:   Objection No. 8 is simply -- it's an

20   appropriate objection but it's a catch-all objection in

21   which the defense takes the position that although the

22   sentencing guideline range here is 135 to 168 months, the

23   variance that is proposed in the recommendation both from

24   the government and from the defense of 60 months is well

25   supported by the particular circumstances of this case.

1    I don't think it's necessary for me to rule on the

2    objection.  I certainly will have that argument in mind

3    as I proceed with my sentencing here.

4        Are you comfortable with that resolution of that

5    objection?

6            Mr. O'CONNOR:  Yes, Your Honor.  Thank you.

7            THE COURT:  Okay.

8        I've now dealt with all of the objections to the

9    presentence report that have been filed.  Having done

10   that, I want the record to reflect that I incorporate into

11   this sentencing proceeding all of the facts and details

12   contained in the presentence investigation report.

13       I do not feel it necessary to recite every single

14   detail contained in the report.  The report is very

15   thorough.  On the other hand, I want the record to reflect

16   that I have read the presentence report carefully and I

17   incorporate all of the facts, whether I mention them

18   specifically or not, into this sentencing proceeding.

19       Specifically I find that the appropriate sentencing

20   guideline range here, the advisory guideline range, is 135

21   to 168 months.

22       I also note, as I did at the beginning of this

23   sentencing proceeding, that this is an 11(C) plea.  It

24   means that both the government and the defense have agreed

25   on a recommendation here.  The agreement is to a 60 month

sentence, considerably below the 135 month bottom of the
sentencing guideline range.

I said a few minutes ago at the start of this
sentencing proceeding that I've had time to digest the
written submissions, reflect on the case as a whole and
consider the sentence.  My inclination as I sit here right
now is to accept the 60 month recommendation.

I understand that this is an unusual case, and one
point I think I'd like to clarify before I proceed too
much further is that I have read the extremely articulate
statement that was submitted by the victim in this case.
And certainly one of the things that has been very
important to me in weighing whether the 60 month sentence
is appropriate is the victim's statement in this case.
It's extremely well written, well organized, and
persuasive.

I don't know, Mr. Grant, or, Mr. O'Connor, whether
the victim is inclined to address the court orally to
supplement her written submission.  She may have a right
to do that before I determine the sentence.  On the other
hand, that may not be necessary because her position has
been articulated so eloquently in her written
submission.

MR. GRANT:  Your Honor, my understanding is that
-- I'm going to refer to her as Minor A because that's how

1   we referred to her in the indictment, would in addition to

2   what she's written speak to the court.  I'm just passing

3   that information along.

4           THE COURT:  All right.  Well, I certainly will

5   give -- I'll refer to her as Minor A.  I referred to her

6   before as the victim.  I'll certainly give her a chance to

7   speak.  I'd like to ask that her remarks be confined to

8   five minutes or so or less if that's possible but

9   something in that neighborhood.

10   So, ma'am, if you would like to come forward and be

11   heard, I'd be very happy to hear what you have to say.  Of

12   course, I've seen you many times.  You've been very

13   religious about coming to these hearings and I'm pleased

14   to see you again today and happy to hear anything that you

15   have to say.

16           MINOR A:  The defendant standing before you I

17   consider to be my husband, and although I may be

18   considered the victim in the case, I believe it is the

19   case that has victimized our family and our family to be.

20   For the past two years I have had to go through the

21   emotional distress of being without my spouse, problems

22   and obstacles I wouldn't have otherwise had to face alone

23   have become life restricting.

24   For nearly half the time my husband has been detained

25   for this case I have been treated with a chemo drug,

Methotrexate, for an autoimmune disease that attacks the joints and causes severe pain. Hospital visits, sickness from the medication and having to quit my job have all been things I've had to face and been forced to deal with alone with no one really to reassure me everything would be okay.

There's been so many mornings I wish I didn't wake up because all I really had to look forward to was that first painful step on the hardwood floor.

The worse part about this chapter in our lives is not just the imprisonment but what comes after. Imprisonment is really the smallest part of this punishment. After release my husband will have to register as a sex offender. This moves beyond an act effecting just our lives but now the lives of our children. What if our children can't get the best education possible because we can't live in a certain school zone? How will we explain to our future children that their father may not be able to attend their school functions? And from the time of release on forward on every application, whether it be job or apartment, he will be forced to label himself a pedophile and a child rapist, a title earned through relations with a woman who would become his wife.

I'm supposed to take the role of the defendant's victim on this case but throughout this entire case from

start and now today finish, I have never felt more

victimized than when I was being questioned by the

prosecution.

At the time the shock of the situation really

prevented me from feeling the full array of emotions

building up inside me, but now being able to look back I

feel so helpless and violated.

At the time I was a minor being pulled out of school

and sat down by two completely unknown men to watch sexual

content of myself with them.  I don't know where, you

know, anything is being held and I can only guess like how

many eyes have fallen onto it.

I'd just like to thank you for allowing me to speak,

and although our story won't end, I'll be happy to close

this chapter of our book.

THE COURT:  Thank you very much.  Thank you very

much.  I appreciate your coming here today and I know it

wasn't easy.  Thank you.

MINOR A:  Thank you.

THE COURT:  So as I said, I do believe

overwhelmingly based upon the substance that we just heard

from the young woman in question here and her written

submission, which is also part of the record, that this is

an unusual case which warrants a very substantial variance

from the guidelines and I do believe that the 60 month

1    sentence is appropriate.

2         So this is not a case where either the government or

3    defense counsel have to harness their very considerable

4    resources of eloquence to persuade me to go along with the

5    recommended sentence.  I would, of course, give both

6    counsel for the government and for the defendant an

7    opportunity to be heard now and also the defendant if he

8    wishes to say anything and then we'll wrap up.

9         So any comments from you, Mr. Grant?

10             MR. GRANT:  Yes, Your Honor.  Normally when the

11   court has indicated that it's inclined to accept an

12   agreement like this I have very little to say, but given

13   this unusual step in the case I do feel like it's

14   necessary for the government to say something about the

15   appropriateness of the resolution of this case.

16        I guess I'd like to first start out by stating

17   because I don't think it's ever been responded to this

18   notion of the agent and I took her out of -- took the

19   victim out of school, that never happened.  Every

20   interview we had was arranged with her father and her

21   father brought her to our offices.  That's completely

22   untrue.

23        In terms of watching pornographic videos, that did

24   not happen either.  She was shown very brief portions of

25   the non-pornographic parts of the videos in order to

1    authentic and identify them which was a proper

2    investigative function.

3        But I don't want what I just said to overshadow which

4    I think is the bigger point which I would agree I think

5    maybe this would be where we all have common ground with

6    that cases like this are difficult where the victim is not

7    in favor of the prosecution.

8        I want to say that I understand that Minor A and the

9    defendant probably think this case should never have been

10   brought and that it was even improper to do so, and I

11   would say that our office makes no apology for having done

12   this case even as I acknowledge that Minor A and the

13   defendant are intelligent people and that their views are

14   honestly held.

15       But, you know, I think the point of departure here is

16   whether the conduct that took place here was a private

17   matter or a matter of public concern, and I think the days

18   have long since passed when crimes are dealt with as a

19   matter of private justice.

20       There are some countries in this world where the

21   victim and the transgressor can make their own deal, but

22   criminal prosecutions in this country are brought in the

23   name of the community and of the government because it is

24   acknowledged that when the legislature makes something a

25   crime, it is a matter of public concern.

1     When we have this type of crime, and I acknowledge

2     that right now we are undergoing a debate about the

3     appropriate punishment for some child pornography offenses

4     and the severity of them, but I think there's very little

5     debate about the production cases or cases involving 30

6     year old men traveling across the country to have sex with

7     minors and to record that sex.  That I don't think is much

8     debate about at all.

9         The point here is that Congress is the one that made

10    this conduct criminal.  They made it a matter of public

11    concern, and the conduct that was prosecuted here was not

12    at the periphery of these statutes but at the very heart

13    of it, the very thing that Congress was concerned about.

14        Even in cases where the minor and the defendant are

15    engaged in a relationship that is non-forceble, and I say

16    non-forceble because I don't want to use the word

17    consensual because the law states that a minor cannot

18    consent to some things, and one of the reasons why the law

19    does not acknowledge or recognize consent from a minor is

20    because oftentimes minors do not make good decisions,

21    like in this case where the defendant engaged in

22    unprotected anal intercourse which has a particular risk

23    for the transmission of sexually transmitted diseases

24    including HIV.  That is one of the reasons why it is a

25    crime and why this matter is a public concern.

1        I also want to say that this was an extraordinary

2    resolution.  It's certainly the first case that I have

3    prosecuted in this office where we are dismissing 17

4    counts, some of those counts or most of those counts in

5    fact brought 15-year mandatory-minimum terms and much

6    higher guideline ranges.

7        So while I acknowledge that this outcome and this

8    prosecution is not what the victim wanted here, we did

9    listen to her.  We listened to her very carefully and it

10   was mainly because of that that we worked out an agreement

11   that was such a substantial departure from the crimes that

12   I believe the evidence actually showed that the defendant

13   committed and a sentence that is actually much less than

14   other cases that even Your Honor has seen involving 15

15   year olds in relationships over the internet and people

16   traveling halfway across the country to have sex with a

17   minor.

18       So I just want it to be said that this resolution I

19   think does comport with what the Victim's Rights Act

20   contemplated, not to turn over the decision of whether to

21   prosecute to the victim but to listen carefully and I

22   think that's what's been done here.

23       I would just ask one other thing, Your Honor, that as

24   part of the plea agreement there is -- the defendant is

25   agreeing to forfeit a number of items that are identified

1    in the plea agreement and we would ask that that be made

2    part of the judgment, and I can move to dismiss Counts 1

3    to 16 and 18 either now or after you've rendered judgment.

4            THE COURT: Let's do that at the very end.

5            MR. GRANT: Okay.

6            THE COURT: Okay. Let me, if you don't mind,

7    Mr. O'Connor, say a couple words before we proceed.

8        First, and I think probably most importantly, I do

9    want to acknowledge how tough this has been for Minor A

10    and for the defendant. This is an unusual case and I want

11    them to know that I understand that.

12        I think I've probably, metaphorically speaking,

13    tipped my hat to the young woman who's been here just

14    about every hearing, and I want to acknowledge her courage

15    and her determination to show her loyalty to the defendant

16    through these appearances.

17        I think I do want to say two things to acknowledge

18    the positive aspect of the government's position here.

19    Mr. Grant made reference to the fact that we don't allow

20    defendants and victims to enter into private resolutions

21    of criminal acts. That's not usually the private

22    resolution; that's not historically the private

23    resolution.

24        The private resolution is usually that the father and

25    the brother and the uncles get together and make a visit

1    to the man who they think has wronged their youngster.

2    That's the private resolution that we normally have and

3    it's usually, or often, quite an appalling resolution and

4    starts a cycle of violence that can spread outwards and

5    cause tremendous damage.

6        We have a system of justice because we need to try to

7    rationalize the emotions that are inevitably generated by

8    this kind of a situation.  We have to try to put them into

9    some kind of a procedure because if we don't, then a

10    vigilantism is what happens and this kind of incident is

11    the kind of incident that in other countries, in other

12    eras and even in the United States, often creates levels

13    of emotion that can be very, very damaging, and that's why

14    we have this, as difficult as it can be for the

15    individuals who are involved.

16        The second point I want to make to acknowledge the

17    government is to say this could have been a lot worse.  I

18    put a defendant in prison on facts not too much different

19    from this only a few months ago for 30 years, 30 years,

20    involving a young woman of about the same age who met a

21    guy on the internet who came to Western Massachusetts.  I

22    gave him 30 years in prison and I had no hesitation about

23    that.  Although Mr. Grant can confirm that I don't like

24    imposing heavy sentences, that case I think fully

25    justified that, but it was not a whole lot different from

this case.

I will say to you, Mr. Waddell, as I know you already know, you are extremely fortunate in your wife. If she had taken a different position, you would be looking at a sentence multiples of the sentence that you're getting now. The fact that this is a different sort of case makes all the difference.

I will also say, speaking just about myself, many other U.S. Attorney's offices even on these facts, even with the victim statements that have been made here, would not have made a deal. Many other U.S. Attorney's offices would not have made this deal. It would have either gone to trial or they would have insisted on a much higher sentence.

I don't know but I wouldn't be surprised if the immediate predecessor to the U.S. Attorney who's currently in charge of Mr. Grant's office would ever have gone along with this deal. We can't know, no one can know. My own feeling is it's quite unlikely that anything less than a 15-year sentence would ever have been agreed to here.

So as ill-used I think as the defendant and his wife may feel about what they had to endure through this prosecution, I hope you'll keep in the back of your mind that as hard as it may have been, it could have been and in almost all the circumstances almost certainly would

1    have been far, far worse.

2         Our U.S. Attorney for this district has been getting

3    a lot of, I think, a little excessive flack lately.  This

4    is an example of a case where the U.S. Attorney's office

5    was unusually receptive.  I know that this seems very

6    harsh what's happening here and I don't in any way want to

7    minimize what Mr. Waddell and his family will be going

8    through.  This is a rough, rough road, a rough road, but

9    it is far smoother than it could have been.

10        So those are the comments I want to make at this

11   juncture.  Again, Mr. O'Connor, I'd be happy to hear

12   anything you have to say.  You're an excellent lawyer and

13   I've heard you at length in other circumstances arguing on

14   behalf of your defendants, but you're home free here as

15   far as the five-year sentence.  I will tell you, unless I

16   hear something shortly that's going to change my mind,

17   that's where we're headed.

18             MR. O'CONNOR:  No, nothing to add, Your Honor,

19   other than what I've submitted on the papers and again on

20   behalf of Mr. Waddell would like to thank the

21   consideration that the United States Attorney's office has

22   done in this case.

23        I do know that prior to this hearing Mr. Waddell

24   wanted to speak shortly to the court.

25             THE COURT:  I'd be happy to hear what he has to

1   say.

2          MR. O'CONNOR:  Let me just double check and make

3   sure that he's still on that same page.

4       Yes, if he could just have a few short words with His

5   Honor?

6          THE COURT:  Yes.  Mr. Waddell.

7          THE DEFENDANT:  Greetings and salutations.  I'm

8   not well at speaking under pressure and I'm extremely

9   nervous, so --

10         THE COURT:  Take your time.

11         THE DEFENDANT:  -- I'll make it short.

12      All I can say is that I regret that this happened,

13  but what I regret most is what's happened to Minor A or

14  Desiree or as I would consider my wife, and she has pretty

15  much put everything into words that I couldn't have said

16  it any better.  All I want is to get it behind me and try

17  to get back doing what I'm supposed to do, which is taking

18  care of her.  That's all I can say.

19         THE COURT:  Well, I'm going to impose the

20  sentence that has been agreed upon, and I want now to read

21  it formally into the record and here it is.

22      Pursuant to the Sentencing Reform Act of 1984 and

23  having considered the sentencing factors enumerated at 18

24  U.S. Code Section 3553(a), it is my judgment that the

25  defendant, James Waddell, be committed to the custody of

1  the Bureau of Prisons to be imprisoned for a term of 60

2  months.

3      I intend that Mr. Waddell receive full credit for the

4  time that he has already been detained, which is

5  approximately 20 months.  He will receive that credit

6  against this 60 month sentence.

7      I also impose the sentence with the recommendation

8  that Mr. Waddell, if at all possible, be confined at the

9  medical facility at Fort Devens.

10     I should have said at the beginning of the sentencing

11 that I have, Mr. O'Connor, received copies of the medical

12 records that you've submitted before the hearing which

13 very carefully document the quite considerable medical

14 problems that Mr. Waddell is suffering, and I think that

15 the facility at Devens would be best equipped to assist

16 Mr. Waddell with his medical problems.

17     I should say that I make these recommendations and I

18 make them in good faith, and I know that the Bureau of

19 Prisons considers them very carefully.  The Bureau of

20 Prisons only accepts my recommendations to Devens about 50

21 percent of the time at the moment, largely because the

22 facility is overcrowded.

23     I don't want to get your hopes up too much, Mr.

24 Waddell.  It's not a guarantee that I've made the

25 recommendation that the Bureau of Prisons will place you

1  there, but they will look at the recommendation and you

2  have a shot and I hope they'll be able to accommodate the

3  recommendation.

4  I'm going to order that upon release the defendant be

5  placed on a term of supervised release for a term of -- is

6  it a minimum-mandatory five-year term?

7  PROBATION OFFICER:  Yes.

8  THE COURT:  I would have considered a lower --

9  MR. GRANT:  That's actually part of the agreed

10  disposition.

11  THE COURT:  Five years of supervised release?

12  MR. GRANT:  Yes.

13  THE COURT:  So upon release from imprisonment

14  the defendant shall be placed upon supervised release for

15  a term of 60 months or five years.

16  Within 72 hours of release from the custody of the

17  Bureau of Prisons, the defendant shall report in person to

18  the district to which he is released.

19  I'm not going to impose any fine on Mr. Waddell

20  because I do not belive he has the financial ability to

21  pay a fine.

22  While on supervised release the defendant shall

23  comply with the following conditions:  The defendant shall

24  not commit another federal, state, or local crime, and

25  shall not illegally possess or unlawfully use any type of

controlled substance.

The defendant will submit to the automatic drug testing which goes along with supervised release beginning within 15 days of his release from imprisonment. There will be one test then and at least two periodic drug tests thereafter. The testing may go up to twice per week or 104 tests per year if the probation office thinks that many tests are needed.

The defendant shall also submit to the collection of a DNA sample which is again automatic. That will be handled by the probation office.

The defendant shall comply with standard conditions that have been adopted by the Court which are described at Section 5D1.3(c). These will be set forth in detail in the written judgment.

The defendant is prohibited from possessing any type of firearm, destructive device, or other dangerous weapon.

Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, the defendant shall register as a sex offender not later than three business days of release. He will keep the registration current in each jurisdiction where he resides, is employed, or is a student.

The defendant shall not later than three business days after each change in name, residence, employment, or student status appear in person in at least one

1    jurisdiction in which he is registered and inform the

2    jurisdiction of all changes in the information.  Failure

3    to do so may not only be a violation of this condition but

4    could be a new federal offense punishable by up to ten

5    years' imprisonment.

6          In addition the defendant must read and sign the

7    offender notice and acknowledgement of duty to register

8    form.  It's a form that has a very long name, Offender

9    Notice and Acknowledgement of Duty to Register as a Sex

10   Offender Per the Adam Walsh Child Protection and Safety

11   Act of 2006 form.

12         The third proposed condition of supervised release is

13   sex offender specific treatment.  Is that part of the plea

14   agreement as well?  I'm not sure it's a hundred percent

15   necessary in the circumstances of this case.  It's quite

16   expensive and quite a lot of work to undergo.

17         This is unusual in the sense that I don't recall --

18   there's no track record here and the specific

19   circumstances of this arose kind of usually so I'm not

20   inclined to impose it.

21             PROBATION OFFICER:  At the very least, an

22   evaluation could be done and if no further treatment is

23   necessary, it would be satisfied just with an

24   evaluation.

25             THE COURT:  All right.  Do you know whether -- I

1    don't have a copy of the plea agreement.

2              MR. O'CONNOR:  It was not part of the plea

3    agreement that I remember.

4              MR. GRANT:  Your Honor, I don't think so

5    either.

6              MR. O'CONNOR:  It's not.  I'm looking at

7    paragraph 5 right now.

8              THE COURT:  Okay.  I'm going to skip over any

9    requirement for evaluation of sex offender specific

10   treatment.  I just think that's unnecessary in the

11   circumstances here.

12        Proposed condition 4, that the defendant not possess

13   or use a computer or have any access to any online

14   service, again I'm not inclined to impose that unless it

15   was something that was specifically agreed to in the plea

16   agreement.  The defendant has employment interests in that

17   area which I would hate to bar him from.

18              MR. O'CONNOR:  Again, Your Honor, it was not

19   part of the plea agreement.

20              THE COURT:  So I'm not going to impose that as a

21   condition.  I'm not going to impose anything related to

22   prohibiting the defendant's access to a computer or access

23   to the Internet in my conditions of release.

24        I think the registration requirement is serious

25   enough and will eliminate any conditions which will

1  prohibit the defendant's access to computers or to the

2  Internet.

3  The defendant -- I'm going to conclude that the

4  defendant shall be ordered to pay the United States a

5  special assessment of $100 which shall be due immediately.

6  That is automatic for the one count that we have here.

7  So I want to just summarize again the conditions of

8  supervised release so that the record is clear and so that

9  there isn't any confusion on the part of the defendant.

10  I'm going to just run back over them.

11  The defendant is not to commit any other federal,

12  state, or local crime.

13  He shall not illegally possess or unlawfully use any

14  type of controlled substance.

15  He shall submit to drug testing as I've already

16  described.

17  He shall submit to the collection of a DNA sample as

18  I've already described, and he shall comply with the

19  standard conditions which will be set forth in the written

20  judgment.

21  He's prohibited from possessing a firearm,

22  destructive device, or other dangerous weapon.

23  He shall register as a sex offender pursuant to the

24  Adam Walsh Child Protection and Safety Act, and comply

25  with all the provisions related to that that I've

1     previously described.

2          He shall pay an assessment of $100.

3          I also order forfeiture of the physical objects which

4     have been already specified in the indictment.  Is it

5     necessary for me to be any more specific?

6          MR. GRANT:  No, I don't think so.  I would just

7     note that they're also specified in the plea agreement.

8          THE COURT:  So those physical items which I

9     don't think the defendant has any particular problem with

10    will all be forfeited.

11         Now I think you can move to dismiss, if you would,

12    Mr. Grant, orally move to dismiss Counts 1 through 16 and

13    18.

14         MR. GRANT:  Yes.  At this time the government

15    would move to dismiss Counts 1 through 16 and Count 18

16    pursuant to the plea agreement.

17         THE COURT:  All right.  That motion is allowed

18    and those counts are all dismissed.

19         I want you to know, Mr. Waddell, that you have a

20    right to appeal this sentence.  The fact that you have

21    pled guilty and even the fact that you entered into a plea

22    agreement, although it may substantially limit your right

23    to take an appeal, the door is never completely closed and

24    if there is some small aspect of this case where you would

25    be allowed to take an appeal and if you wish to pursue

1    one, you may do so.  If you do not have the funds to

2    obtain your own attorney, you may apply for appointment of

3    counsel to pursue that appeal.

4        I do believe that part of the plea agreement included

5    a waiver of plea and a waiver of collateral attack.  That

6    waiver may very substantially limit your right to appeal,

7    but, as I say, no waiver is ever entirely effective in

8    eliminating all possibility.

9        I think that your wife said it as well as I can,

10   which is that this day today marks at least the beginning

11   of the transition for everyone towards the sunlight and

12   better days, and I do know that you still have a

13   considerable amount of time in custody, Mr. Waddell.  I

14   hope you will be able to get through that time without too

15   much additional hardship and that you will continue to

16   express and through your conduct express the devotion that

17   has been shown to you by your wife and that you continue

18   to express towards her.  I wish you both good luck.

19        If there's nothing further, the court will be in

20   recess.

21            MR. O'CONNOR:  Thank you, Your Honor.

22            THE COURT:  Court's in recess.

23   **(Court recessed at 2:50.)**

24

25

1                     C E R T I F I C A T E

2

3

4          I, Alice Moran, RMR, RPR, CSR, Official Court

5     Reporter for the United States District Court for the

6     District of Massachusetts, do hereby certify that the

7     foregoing transcript constitutes, to the best of my skill

8     and ability, a true and accurate transcription of my

9     stenotype notes taken in the above-entitled matter.

10

11

12    Date:   January 19, 2016

13

14    /s/ Alice Moran

15    _____

      Alice Moran
16    Offical Court Reporter

17

18

19                 Alice Moran, CSR, RPR, RMR
                     Official Court Reporter
20                 300 State Street, Room 303D
                     Springfield, MA 01105
21                      413-731-0086
                    alice.moran@verizon.net
22

23

24

25